UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER GRAY,

               Petitioner,

-vs-                                      Case No.  8:06-cv-551-T-24TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS,

               Respondent.

_____/

## ORDER

      This cause is before the Court on Petitioner Christopher Gray's 28 U.S.C. § 2254 petition for writ of habeas corpus.  Gray challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pasco County, Florida. A review of the record demonstrates that the petition must be **denied.**

BACKGROUND

      On August 3, 1999 in Case No. CRC99-02462, Gray was charged by Information with one count each of robbery with a firearm and felonious possession of a firearm.[1] (Exh 17: Vol.

---

[1] The count of felonious possession of a firearm was apparently severed by agreement of the parties. (Exh 17: Vol. 1: R 144-145).

1: R 5, 12-13).[2]  On August 13, 1999, the State charged Gray by separate Information in Case No. CRC99-02450CFAWS with burglary of a dwelling. (Exh 17: Vol. 1: R 21-22).

Prior to trial, the state trial court granted, over defense counsel's objection, the State's motion to consolidate (for trial) the robbery and burglary charges. Subsequently, the robbery and burglary charges were tried beginning June 12, 2001.  On June 14, 2001, the jury found Gray guilty as charged in both cases. (Exh 17: Vol. 1: R 88-90). On October 26, 2001, the state trial court sentenced Gray to life in prison as a Prison Releasee Reoffender and to sixty years in prison as a habitual felony offender on the robbery count, and thirty years in prison as a habitual felony offender on the burglary count.  Subsequently, the state trial court amended the sentence on the robbery charge to remove the 60-year habitual offender sentence. (Exh 17: Vol. 1: R 129-130, 189-191).

Gray appealed, raising five issues. (See Exhibit 1)  The State filed an answer brief (Exhibit 2), and Gray filed a reply brief. (Exhibit 3). Oral argument was heard on September 23, 2003. (Exhibit 4). On October 8, 2003, in Case No. 2D01-4941, the state district court of appeal per curiam affirmed Gray's sentence and conviction. (Exhibit 5). *Gray v. State*, 865 So. 2d 493 (Fla. 2d DCA 2003)[Table]. Gray filed a pro se motion for rehearing (Exhibit 6), which was denied by the state district court of appeal on November 7, 2003. (Exhibit 7). The mandate issued December 11, 2003. (Exhibit 8).

On July 8, 2004, Gray filed a pro se Rule 3.850 motion for postconviction relief alleging

---

[2] Respondent filed the  eight-volume record on direct appeal as Respondent's Exhibit 17. References to the documents, pleadings and transcripts found in Volume 1 are designated "R," followed by the page number located in the  lower right hand corner of the page. The trial transcript begins in Volume 2 and continues through Volume 5, and is referenced by  volume number and "R," followed by the page number located in the upper center corner of the page. Although the last three volumes are designated by the clerk as addendum or supplemental volumes, Respondent renumbered the record as volumes 1 through 8.

that trial counsel was ineffective for failing to request that a juror be dismissed after it was brought to the attention of the state trial court that the juror had been at the scene of the crime at the time the crime occurred. (Exhibit 9).  On June 20, 2005, the state trial court ordered the State to show cause why relief should not be granted. (Exhibit 10). The State filed its response on or about August 2, 2005. (Exhibit 11). The state trial court granted an evidentiary hearing on Gray's claim. (Exhibit 12). However, prior to the hearing date, Gray filed a motion to dismiss the Rule 3.850 motion, stating "After further consideration, Defendant acknowledges that his issue lacks merit." (Exhibit 13). On October 31, 2005, the state trial court dismissed the Rule 3.850 motion pursuant to Gray's motion to dismiss. (Exhibit 14).

On March 3, 2006, Gray filed a pro se petition for writ of habeas corpus in the state district court of appeal. (Exhibit 15). He alleged that his appellate counsel was ineffective for failing to present appellate issues as violations of the federal constitution. On March 16, 2006, in Case No. 2D06-942, the state district court of appeal denied the petition for writ of habeas corpus without discussion. (Exhibit 16). *Gray v. State*, 923 So. 2d 1170 (Fla. 2d DCA 2006)[table].

## THE PRESENT PETITION

Gray signed the present federal petition on March 30, 2006, and delivered the petition to prison officials for mailing on that same date. (Doc. No.  1). Gray raises eight grounds for relief.[3]

---

[3]  Petitioner signed the present petition on March 30, 2006. Respondent filed his response to the petition on July 14, 2006.  It was not until August 1, 2006, that Petitioner filed a motion for leave to file an amended petition.  The Court denied the motion.  On August 21, 2006, Petitioner filed a motion for reconsideration of this Court's denial of his motion to amend his petition and request for an extension of time to do so.  This Court denied his motion stating:

In his motion to amend, Petitioner states that he inadvertently failed to raise the

STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was

---

claim that his appellate counsel was ineffective for failing to brief federal constitutional issues in his appellate brief. A review of the record shows that Petitioner filed a state habeas corpus petition raising ineffective assistance of appellate counsel. In that state petition, he raised the claim that he now alleges he "inadvertently overlooked" when he filed his 28 U.S.C. § 2254 petition. Petitioner states that the reason he did not include the ineffective assistance of appellate counsel claim in his present petition was that he was relying on inmate law clerks and that three inmate law clerks were involved in the preparation of his federal petition. This argument is not persuasive.

Petitioner is responsible for his filings. He does not state in his affidavit accompanying the present motion (Doc. No. 19) that he cannot read, or that he did not know about the claim when he signed the federal petition which is now before the Court and to which Respondent has filed a response. While inmate law clerks are a source for aiding in Petitioner's preparation of his filings, Petitioner makes the final decision about what is filed in this Court.

(See Doc. No. 20).

4

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

DISCUSSION

Ground One

Gray contends that his due process rights were violated when the state trial court forced him to go to trial on consolidated charges of robbery (Case No. 99-2462) and burglary (Case No. 99-2450) which he alleges were unrelated.

Prior to trial, the State argued for consolidation, alleging that while Gray was fleeing from police officers after the robbery, he broke into a dwelling to hide from the police and thereby committed the burglary. At a hearing on June 11, 2001, the state trial court ruled that the cases were intertwined and that they should be tried together. (Exh 17: Vol. 8: R 443-454).

Ground one has no merit because it presents a state law claim that is not cognizable in this federal proceeding. Federal courts have jurisdiction to entertain petitions for habeas relief only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See Barclay v. Florida*, 463 U.S. 939 (1983); *see also Wainwright v. Goode*, 464 U.S. 78 (1983); *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Errors which do not infringe upon federally protected rights provide no basis for federal habeas corpus relief. "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

Even if Gray presented a constitutional claim in his § 2254 petition, it would be unexhausted and procedurally barred. Pursuant to *Duncan v. Henry*, 513 U.S. 364 (1995), Gray

5

must fairly present the substance of his federal claim to the state courts in order to satisfy the exhaustion requirement. Briefing an issue as a matter of state law, however, is not sufficient to exhaust a federal claim of the equivalent ground. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 364. *Accord Anderson v. Harless*, 459 U.S. 4 (1982).

Ground one does not warrant habeas corpus relief.

Ground Two

Gray contends his rights to due process of law and trial by impartial jury were violated when the jury was exposed to improper and biased comments during voir dire. Gray raised this issue on direct appeal, arguing that "the trial court abused its discretion by failing to dismiss or strike tainted or biased jurors, after a venireman told other prospective jurors that the Appellant stole from him and was 'going down.' "

Gray did not argue at trial or in his appellate brief that his federal constitutional rights were violated by the court's decision not to remove the prospective jurors in question. Accordingly, this claim is unexhausted and procedurally barred. Gray has not shown cause and prejudice to overcome the procedural bar, nor has he shown that manifest injustice will ensue if this Court does not hear the merits of the claim.

Moreover, the trial court's failure to strike the venire was not an abuse of discretion in this case, and did not result in a violation of Gray's right to a fair trial by an impartial jury. A

review of the voir dire proceeding indicates the following discussions took place:

When prospective juror Wayman asked to approach the bench, she told the state trial court judge that she had overheard prospective juror Battista say to the lady next to him that he thought he recognized Gray; that Gray robbed a place once and Battista saw him; and that Gray "is crazy as a loon." (Exh 17: Vol. 7: R 306-308).  Wayman indicated that the juror next to her,  Crispens, had also heard what Battista said. The state trial court judge decided to voir dire individually the prospective jurors who had been sitting near Battista to determine whether they had heard his comments. (Id. at R 308-309).

The state trial court judge called a recess and the other prospective jurors were temporarily excused. Battista and prospective jurors Gould, Hensley, Giacokvi, Cusumano, Binoniemi, Monahan, Wayman, and Crispens, who were the eight people seated closest to Battista, were taken to the jury room and then called into the courtroom one at a time for questioning regarding Battista's comments.

Battista was called  first and was asked whether he previously had seen Gray. (Id. at R 314).  After the state trial court judge questioned Gray about Gray's age, Battista indicated that he did not know Gray; but that Gray resembled someone who had worked for him several years before the trial and who had tried to steal pots, pans, dishes, and silverware from Battista's business. (Id. at R 314-317).

When asked whether he had communicated this information to anyone around him on the panel,  Battista stated that he had told Cusumano, the lady next to him, that Gray looked familiar. Battista stated that he did not think that he said anything about why Gray looked familiar to him or what he had done. When questioned by defense counsel,  Battista stated that he had said that the person who worked for him was as crazy as a loon, not that Gray was. (Id.

at R 318).  Battista indicated that Cusumano did not respond to his comments. Battista did not know whether anyone other than Cusumano heard what he had said. Battista stated that he knew Gray was definitely not the person who had worked for him, due to the significant age difference between Gray and the former employee. (Id. at R 319, 321). Gray was twenty-five years old at the time of trial. The employee who had attempted to steal from Battista had been in his '20's at the time he worked for Battista, which was years before the trial. (Id. at R 317).

Prospective juror Gould stated that he had not heard any conversation between Battista and Cusumano or anyone else and that there was nothing about Gray that was familiar to him. (Id. at R 321-322). Prospective juror Hensley stated that she did not overhear any conversation between Battista and Cusumano and that she did not recognize Gray. (Id. at R 323). Prospective juror Giacokvi stated that she did not overhear any conversation between Battista and Cusumano, and she did not recognize Gray. (Id. at R 324).

Prospective juror Binoniemi stated that Battista had been talking to Cusumano. Binoniemi was not trying to pay any attention to what Battista was saying, but thought she heard him say "something about he thought it was him only he looks older and he was sure of it."  Binoniemi did not know who Battista was talking about. She thought he was talking about Gray, but was not sure. (Id. at R 325-326). The state trial court informed Binoniemi that Battista had been asked about the conversation and that, after he "got a closer look at Gray,"  Battista had said that Gray was not the person he thought he was and that he did not know Gray. Binoniemi did not hear Cusumano respond to Mr. Battista's comments. When asked whether there was anything about Battista's comments that would affect her ability to serve as a juror, Binoniemi responded, "No, I have no idea. I didn't truthfully know what he was talking about." (Id. at R 327).

8

Prospective juror Crispens stated that she did overhear a conversation between Mr. Battista and Cusumano. (Id. at R 328).  Crispens believed that she had heard Battista say that he thought he recognized Gray and that he thought he might have worked for him at one time and that he believed that if that was the person who had worked for him, that he had stolen from him. When asked whether she had heard Battista make a comment about mental capacity, Crispens indicated that " . . . he said he was - - I forget the euphemism, something about loonier than a big - - or something, one of those catch phrases, I don't know."  The state trial court informed Crispens that Battista, upon "getting a closer look at Gray," had said that Gray was not the person he had thought he was and that he had been mistaken. (Id. at R 328-329). The prosecutor informed Crispens that Battista had stated that he made the statement about someone who had worked for him fifteen years previous to the trial and who had been twenty-five years old at that time, and pointed out that Gray would have only been nine or ten years old at that time. Crispens indicated that the conversation she had overheard would not in any way affect her ability to be a fair and impartial juror in the case.  Crispens did not hear any response from  Cusumano. (Id. at R 329).

Prospective juror Monahan heard parts of the conversation between Battista and Cusumano. (Id. at R 330). When asked to relate exactly what he had heard Battista say, Monahan stated: "He was talking about somebody that - - it appeared like the individual should have been pleading the case or he wouldn't be sitting up here if he wasn't guilty." (Id. at R 330-331). Monahan did not hear Battista indicate that Battista thought he recognized Gray. The following colloquy then took place between the trial judge and Monahan:

> THE COURT: All right. Now, is there anything about his conversation that you overheard that would affect you as being a fair and impartial juror in this case?

9

PROSPECTIVE JUROR MONAHAN: That I would consider that I would be unfair. I believe that everybody has to be proven guilty to me before I'm going to try to convict them.

THE COURT: And you heard my explanation, the mere fact that he was charged is not to be considered by you?

PROSPECTIVE JUROR MONAHAN: I agree a hundred percent.

THE COURT: And you agree with that?

PROSPECTIVE JUROR MONAHAN: Yes.

THE COURT: The State always has the burden of proving guilt beyond and to the exclusion of every reasonable doubt. The defendant doesn't have to prove anything.

PROSPECTIVE JUROR MONAHAN: That's right.

THE COURT: That's right.

PROSPECTIVE JUROR MONAHAN: I hope that's it, sir.

THE COURT: That is what the law is, I assure you. Okay.

(Exh 17: Vol. 7: R 331-332).

Monahan stated that nothing Battista had said would have any influence on him whatsoever and that, in fact, he had taken offense to Battista's comments. Monahan did not hear any comments by Cusumano. (Id. at R 334).

The court next called Cusumano and asked whether she had had any conversations with Battista about the case or anybody involved in the case. (Id.). Cusumano stated that Battista was "talking a lot" and that Battista mentioned that he may have known Gray previously through employment.  Cusumano stated that Battista had said that he was pretty sure that he knew Gray from several years back; that Gray had been employed by him; and that he had caught Gray in the act of stealing. (Id. at R 335). The state trial court judge informed  Cusumano that

Battista had said that he was mistaken and that Gray was not the person he had thought he was.  Cusumano stated that nothing Battista had said would affect her ability to be a fair and impartial juror in Gray's case. Cusumano stated that Battista had said that he could be totally mistaken. The prosecutor informed Cusumano that Gray would have been nine or ten years old at  the time of the incident that Battista had described. (Id. at R 336).  Cusumano agreed that Battista had made a statement indicating that he thought Gray should have entered a plea. She stated that Battista had said that he believed Gray had been chased across county lines and should just turn himself in and save the court the expense of a trial and save time. (Id. at R 338-339).  Cusumano said that she did not have any reaction to that comment because she did not know the basis of the comment. (Id. at R 339).

Prospective juror Wayman was asked to repeat what she had overheard Battista say to Cusumano.  Wayman responded :

> I heard him say, "I think I recognize that guy. I do recognize him. He was stealing. I caught him stealing. He is crazy as a loon," and - - either he said that sucker or that guy is going down. That's what he said."

(Id. at R 341). The state trial court judge informed Wayman that Battista had said he was mistaken and that Gray was not the person Battista had thought he was.  Wayman did not believe that Battista could have been mistaken because "he was too certain." (Id. at  R  342). Wayman stated that Battista's comments would affect her ability to be a fair and impartial juror. (Id. at R 343). The state trial court then, on its own motion, struck  Wayman and Battista for cause. (Id. at R 344-345).

Defense counsel argued that, based on the firmness with which Battista expressed his beliefs, as testified to by Wayman, prospective jurors Cusumano and Binoniemi, who were seated next to Battista, should be excused for cause as well. The Court granted those

11

challenges for cause, stating, "Okay, in an abundance of caution, I will do that." (Id. at R 346).

Crispens and Padua were selected as jurors. The State used a peremptory challenge to strike Monahan from the jury. (Id. at R 411-412).

The state trial court did not abuse its discretion in failing to strike the venire. *See Brower v. State*, 727 So. 2d 1026, 1027 (Fla. 4th DCA 1999)(no abuse of discretion not to strike the venire where the jurors involved were questioned by the court, all prospective jurors who made offending comments were dismissed, and only one juror who heard offending remarks was permitted to remain on the jury).  The state trial court did not abuse its discretion by not excusing juror Crispens. Even though juror Crispens overheard Battista's initial remarks, the state trial court judge informed her that Battista had retracted his remarks. Furthermore, the record shows Crispens stated that what she had overheard "would not in any way affect her ability to be a fair and impartial juror."  Consequently, Gray was not denied the right to a fair trial with an impartial jury.

Ground two does not warrant relief.

Ground Three

Gray alleges that his right to due process and to trial by an impartial jury were violated when the court failed to remove juror Padua from the jury after learning that she may have been present during the robbery. Gray failed to preserve the claim at trial and on direct appeal as a federal constitutional claim. Thus, this claim is unexhausted and procedurally barred. Even if the claim had been presented as a constitutional violation of  Gray's right to a fair trial by an impartial jury, the issue was affirmatively waived by Gray's election to retain Padua on the jury, as indicated in the record.

When Padua told the state trial court judge that she was at the K-Mart at the time of the

12

robbery, the judge asked counsel, "Now, do we want to bring her in and voir dire her, or, I mean if she thinks she was at this thing, we can agree right now just to dismiss her. I think we have two alternates." (Exh 17: Vol. 2: R 155). Defense counsel said that they had to voir dire her. (Id. at R 156). During voir dire, Padua confirmed that it was her belief that she may have been at the K-Mart when the robbery took place. (Id. at R 158). Padua indicated that she was at K-Mart one time and heard that somebody had robbed the store and had a gun. However, she did not know the date that this had happened. Id. She did not see Gray or any of the witnesses in the store. (Id. at R 160). Padua stated that the fact that she may have been at the K-Mart had not tainted her view of the case and that she could be a fair and impartial juror. (Id. at R 161).

Padua stated that, when she realized that she may have been present at the scene, she got a "gut feeling" that she needed to tell somebody about it. She then stated, "And I don't know one way or the other if it would change my mind whatsoever being there at the time." Id. Defense counsel asked what kind of "gut feeling" Padua had when she realized she had been at the K-Mart when the robbery took place and Padua responded, "Terrible. Terrible that I had been there --." Defense counsel then asked, "Terrible in the sense that you think Gray did it because you were there?" Padua responded, "No. No, just that I was there while it was happening." (Id. at R 162-163).

Upon questioning by the state trial court about whether she felt comfortable proceeding as a juror, or whether she would rather be dismissed, Padua stated that she would rather be dismissed. (Id. at R 163-164). The judge then asked whether she felt that it might put her in an uncomfortable situation to continue to serve as a juror and she responded that "[i]t would put me at an advantage or a disadvantage, I would say. Because I did hear people say certain things." She then stated that it had all been hearsay and that all she knew was that she had

13

been there at the time. (Id. at R 164). Defense counsel asked  Padua what she meant when she said that she might have an advantage over the other jurors and  Padua responded:

> Because I had all of the sudden you get panic stricken in your gut. You [k]now how when you get that feeling that something seriously was wrong and that I heard that somebody had a gun. But does that mean that he had the gun? No. And I just felt that I needed to tell somebody.

(Id. at R 165). Defense counsel asked whether, although Padua did not feel comfortable being a juror, she could still be fair and impartial.  Padua responded, "Yeah, of course." Id.  Padua again indicated, in response to a question from the court, that she would rather not be on the panel. (Id. at R 165-166). Both the prosecutor and the state trial court judge initially indicated that they felt that Padua should be removed from the jury. (Id. at R 166-167). Defense counsel argued that she should remain on the jury. Defense counsel stated, "I would like her to be on this jury panel. I think it is critical." (Id. at R 168). Defense counsel stated that if  Padua were stricken from the jury, she would be called as a witness. (Id. at R 172).

The prosecutor pointed out that Padua did not actually witness anything. The state trial court ruled that she should be excluded from the jury panel and offered to allow counsel to voir dire her to determine whether to call her as a witness. (Id. at R 175). Defense counsel objected to the court's ruling, asked that Padua remain as a juror, and stated that she would like to voir dire  Padua to determine whether she should be called as a witness. (Id. at R 175-176). Subsequently, the prosecutor withdrew the State's objection to Padua's remaining as a juror. (Id. at R 181).

At one point, defense counsel stated that she wanted Padua stricken from the panel so that she could call her as a witness. (Id. at R 183). However, she then argued that  Padua was competent to be both a juror and a witness. (Id. at R 185). The state trial court judge indicated

14

that defense counsel first must determine whether she wanted Padua to remain on the jury or be stricken; if she chose to have Padua stricken, she could then voir dire her to determine whether she could be called as a witness. (Id. at R 189).

After considering the issue, defense counsel again asked that Padua remain as a juror. (Id. at R 191).  Padua was brought back into the courtroom and again asked if she could be a fair and impartial juror. (Id. at R 193). She responded that she would not say yes or no; that she would like to say that she would just listen to the facts, but that she had been distracted during the previous witness' testimony because she had been attempting to get the bailiff's attention. (Id. at R 193). Upon further questioning,  Padua stated that she could be a fair juror even though she had been distracted during the previous witness' testimony and even though she was nervous and would be more comfortable not serving as a juror. (Id. at R 194-195).

Defense counsel stated that she had no objection to Padua's remaining as a juror. (Id. at R 195). The state trial judge informed  Padua that she would remain as a juror and  Padua again indicated that she could be fair to both sides. (Id. at R 195).  Padua remained on the jury.

Ground three does not warrant habeas relief.

### Ground Four

Gray asserts that his trial counsel was ineffective for failing to move the state trial court to strike jurors Crispens and Padua from the jury panel. Although Gray raised this issue in his rule 3.850 in state court, this claim is unexhausted and procedurally barred because Gray voluntarily dismissed the motion for postconviction relief during the course of that proceeding. In Florida, if the substance of a claim is not presented on direct appeal, exhaustion requires both the filing of a Fla. R. Crim. P.  3.850 motion and an appeal of its denial to the Florida District Court of Appeal. *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)(exhaustion

requires not only the filing of a rule 3.850 motion, but also an appeal of its denial). By voluntarily dismissing his postconviction motion, the state courts were deprived of a "full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Because of Gray's own actions, the state trial and appellate courts were deprived of an opportunity to adjudicate the claim on its merits, and this Court is also precluded from doing so.

Ground Four does not warrant habeas corpus relief.

Ground Five

Gray argues that his constitutional right against self-incrimination was violated when the state trial court denied the motion to suppress his statements. Gray asserts the statements were involuntary because he had suffered an asthma attack and an epileptic seizure prior to being questioned, and he informed the police officer that he had been using marijuana, alcohol, and medications prior to the criminal incident and his arrest.

This claim has no merit.  Whether a confession is voluntary must be judged by the totality of the circumstances. *Brewer v. Williams*, 430 U.S. 387, 402 (1977). Although at trial the prosecution must establish that a challenged confession was voluntary, *see Lego v. Twomey*, 404 U.S. 477, 489 (1972), on collateral review, the burden of proving involuntariness rests with the habeas petitioner, *see Martin v. Wainwright*, 770 F.2d 918, 925 (11th Cir. 1985), *modified by Martin v. Wainwright*, 781 F.2d 185, *cert. denied*, 479 U.S. 909 (1986). The test is whether the petitioner's "will [was] overborne and his capacity for self-determination critically impaired." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).

To establish that his confession was involuntary, a petitioner must also establish police coercion. *Moore v. Dugger*, 856 F.2d 129, 132 (11th Cir. 1988)(citing *Colorado v. Connelly*, 479

U.S. 157, 163-166 (1986). In this case, the state trial court addressed the voluntariness issue and, after hearing the testimony of the arresting officer, concluded that Gray's statements were given freely and voluntarily.

During the voir dire of Officer Allison to determine whether Gray's statements to her were admissible, Officer Allison testified that Gray's violent jerking stopped while he was still at the scene of the burglary. (Exh 17: Vol. 3: R  332). After he arrived at the emergency room, the officers shackled him to the bed. At this point, Gray's eyes were open, he was very calm, and Officer Allison asked him his name. (Id.) Gray did not verbally respond. Officer Allison asked whether his name was Christopher Gray and whether he was 23 years old and he nodded his head yes in response to each question. (Id. at R 333).

Gray was taken for x-rays. After the x-rays were completed, Officer Campbell read Gray his rights, and Officer Allison questioned Gray. Gray appeared to be alert at that time. Officer Allison questioned Gray about the gun that had been used in the robbery the previous day. Gray said that he did not know where the gun was, but that he knew who had it. Gray admitted having had the gun, but shrugged his shoulders when asked whether he had pointed it at the K-Mart manager. (Id. at R 334).

The state trial court ruled that "there is no evidence here to show that this wasn't freely and voluntarily entered. So I would allow the statements to come in after *Miranda*." (Id. at R 354). The state trial court also ruled that the State could not elicit any statements or evidence relating to Gray's use of marijuana or cocaine, but that the defense would be free to elicit this testimony. (Id. at R 355- 356).

During the trial, Officer Allison testified that Gray stopped jerking at the scene immediately after being given a shot. (Id. at R 364). Officer Allison testified that Gray was read

17

his rights at the hospital. (Id. at R 365). Officer Allison testified that Gray indicated that he understood his rights and that he wanted to make a statement. Approximately two-and-a-half to three hours passed between Gray's arrest and the time that he was read his rights. After Gray said that he understood his rights, Officer Allison asked him questions. (Id. at R 366). Officer Allison asked Gray about the gun used during the robbery. Gray said that he did not know where the gun was, that he knew who had it -- a guy named Marcus -- and that Marcus was a drug dealer staying in a motel in Holiday, Florida. Officer Allison asked Gray whether he had pointed the gun at the K-Mart manager and Gray shrugged his shoulders. (Id. at R 367). Gray did not seem surprised or angry when Officer Allison asked him about a gun being used during the K-Mart robbery. (Id. at R 368).

Given the totality of the circumstances, Gray has not carried his burden to show that the statements were involuntary or resulted from police coercion. Thus, the state trial court's denial of the motion to suppress did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, nor result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ground five does not warrant habeas corpus relief.

### Ground Six

Gray contends he is actually innocent of the crime of robbery with a firearm.  He argues the state trial court erred in denying his motion for judgment of acquittal as to this charge. This claim is procedurally barred, because it should have been, but was not, raised on direct appeal. A review of the Gray's initial brief reflects that he challenged the trial court's denial of his motion for judgment of acquittal on the burglary charge only, not the robbery charge. (Exhibit 1: Initial

Brief of Appellant at pp. 41-42).

To avoid a procedural default, a petitioner must present his claims to the state courts in a procedurally correct manner. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). The procedurally correct manner for preserving claims of error that occurred during trial is to assert the error at the trial level and then raise the alleged error on direct appeal. "In order to preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court." *Bertolotti v. Dugger*, 514 So. 2d 1095, 1096 (Fla. 1987). *See Occhicone v. State*, 570 So. 2d 902, 906 (Fla. 1990).

The federal court must dismiss those claims or portions of claims that  1) either have been explicitly ruled procedurally barred by the highest state court considering the claims; 2) or are not exhausted, and would clearly be barred if the petitioner returned to state court to pursue the claim. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or can establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Cause must ordinarily be something external to the defense, *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)(ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted). Gray does not meet the cause and prejudice or fundamental miscarriage of justice exceptions to lift the state procedural bar. He does not suggest the existence of new and reliable evidence of actual innocence. *See*

*Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Absent a showing of cause and prejudice, federal habeas courts may not reach the merits of "*procedurally defaulted* claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992)(emphasis in original)(citing *Murray v. Carrier*, 477 U.S. 478 (1986)). *See also, Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir. 1995)(A federal habeas court should not even discuss the merits of a claim that has been procedurally defaulted in state court).

Ground six does not warrant habeas corpus relief.

### Ground Seven

Gray contends that the trial court committed reversible error by denying his motions for judgment of acquittal on the burglary charge. He argues that the State failed to prove any intent to commit an offense in the house and failed to prove that the burglarized home belonged to Earl Brown, as charged in the information.

Gray did not present his argument to the state court as a question of federal constitutional error, and the claim is procedurally barred. Before seeking federal habeas relief, a state prisoner to satisfy the exhaustion requirement, 28 U.S.C. § 2254(b)(1), must "fairly present" his claim in each appropriate state court to alert that court to the claim's federal nature. *See Baldwin v. Reese*, 541 U.S. 27 (2004). By not timely raising the constitutional dimension of his claim at trial in order to preserve the claim for review and also by not raising a constitutional claim on appeal, Gray deprived the state courts of a full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. at 845.

Moreover, Gray does not make the required showing under the AEDPA. The evidence

at trial was sufficient to establish the elements of the charged offense to survive a motion for judgment of acquittal. When reviewing the sufficiency of the evidence under the AEDPA standards, the limited inquiry is whether it is objectively reasonable to conclude the evidence presented, viewed in a light most favorable to the state, would have permitted any rational trier of fact to find the petitioner guilty of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).

The trier of fact is responsible for fairly resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* Although the facts as they exist in the record may support opposing inferences, a federal habeas corpus court must presume that the jury resolved such conflicts in favor of the prosecution and against the petitioner. *See Machin v. Wainwright*, 758 F.2d 1431, 1435 (11th Cir. 1991); Heath v. Jones, 863 F.2d 815, 820 (11th Cir. 1989).  In other words, the federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *Heath,* 863 F.2d at 820 (citing *Jackson, supra*, 443 U.S. at 326).

Viewing the evidence in the light most favorable to the prosecution, it can be reasonably determined a rational trier of fact could have found beyond a reasonable doubt that Gray committed the offense of burglary of a dwelling as charged in the information. First, there was ample evidence to support the jury's finding that Gray intended to commit an offense in the dwelling. Gray's wife (and his codefendant), Rachelle Harris Gray, testified that she and Gray entered the dwelling to hide from the police. (Exh 17: Vol. 4: R 416). Thus, the evidence clearly supports a finding of an intent to commit either the offense of fleeing and eluding or the offense of resisting arrest or obstructing an officer at the time Gray entered the dwelling. Gray's argument that the State failed to prove intent is without merit.

21

Second, the State argued correctly in its answer brief on direct appeal that ownership of the burglarized property was sufficiently established:

> This court has held that ownership is a material element of burglary and must be proven as alleged. *D.S.S. v. State*, 806 So.2d 554, 556 (Fla. 2d DCA 2002). However, actual ownership is not required, and "the state can meet its burden of proving ownership by simply establishing a possessory right of the alleged victim superior to that of the accused." *Id.* The evidence and inferences in the instant case were sufficient to support a finding that the house belonged to Earl Brown. Thus, ownership was sufficiently proven.

> During the testimony of appellant's wife and codefendant, Rachelle Harris, the following colloquy took place between the prosecutor and  Harris:

> Q. **The house that you went to belonged to a person by the name of Earl Brown**; do you know him?

> A. No, sir.

> Q. Have you ever been in that house before?

> A. No, I never been on that street before.

> Q. Have you ever been - - you never been in that house with Mr. Gray?

> A. The night - - before that night?

> Q. Right.

> A. No.

> Q. This - - does the Defendant have any relatives by the name of Earl Brown that you are aware of?

>  A. No.

> Q. Has he ever mentioned anything about - -

> A. No.

> Q. - - this person living there at this house?

> A. No.

Q. When you went in that house, did you have any permission to go in there?

A. No, **I had no permission to be in that man's house**.

Q. To your knowledge, did the defendant have any?

A. **Neither one of us had any permission to be in that man's house**.

Q. Why did you go in the house?

A. We were running from the police. We was trying to find a place to hide. His house wasn't the first house we went to trying to get in. The first house we went into, a man answered the door and I told him we were running from the police and he told us no, he wasn't going to let us in. So **Mr. Brown's house** was the second house.

(R Vol. IV, pp. 415-416).

During the cross-examination of Harris, defense counsel asked, ". . . How far ahead was Christopher when he - - before he entered **Earl Brown's house**?"(R Vol. IV, p. 429).

The prosecutor, the defense attorney, and appellant's codefendant all referred to the house as Earl Brown's house. The codefendant's testimony referring to the house as Mr. Brown's house was sufficient, in the absence of any objection, to prove ownership and appellant's burglary conviction should be affirmed.

Finally, it should be noted that "[t]he two reasons for requiring proof of ownership or custody are first, to show that the building was not the property of the accused, and second, to identify the offense sufficiently to protect the accused from a second prosecution for the same offense." *D.S.S. v. State*, 806 So.2d 554, 556 (Fla. 2d DCA 2002). *See also In Interest of M. E.*, 370 So.2d 795, 796-797 (Fla. 1979). Appellant's codefendant specifically testified that appellant had no permission to be in the house and police officers testified to the address of the house. This testimony was sufficient to prove that the house did not belong to appellant and to protect him from a second prosecution for the same offense. Thus, the objectives for requiring proof of ownership were met.

(Exhibit 2: Answer Brief of Appellee at pp. 33-36).

Ground seven does not warrant habeas corpus relief.

23

Ground Eight

Gray argues that his sentence is illegal and violates his due process rights. Specifically, Gray alleges the trial court improperly sentenced him as a prison releasee reoffender and an habitual offender because the State did not present any evidence proving the qualifying prior convictions.

This claim does not concern a matter of federal constitutional magnitude. Federal habeas relief is available to correct only those injuries resulting from a violation of the Constitution or laws or treaties of the United States. It is well-settled in this circuit that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures. *Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan*, 861 F.2d at 1508. A state's interpretation of its own laws provides no basis for federal habeas relief since no question of a constitutional nature is involved. *See Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983)(*per curiam*); *Smith v. Wainwright*, 741 F.2d 1246, 1258 (11th Cir. 1984); *Beverly v. Jones*, 854 F.2d 412, 416 (11th Cir. 1988). Gray has no recourse in this Court to challenge what he perceives to be an error in sentencing. Moreover, Gray raised this issue on direct appeal, and the state appellate court's affirmance establishes as a matter of Florida law that Gray's sentence is valid.

Ground eight does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Gray's petition for writ of habeas corpus is denied, with prejudice. The Clerk is

directed to enter judgment against Gray and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on May 31, 2007.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Christopher Gray

25